UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:24-CV-92 |
| ) | |
| ALLIANCE PARK LLC; BRICKYARD ) | |
| PLACE LLC; CENTEX ) | |
| MANAGEMENT, LLC; DEERWOOD ) | |
| POINT LLC; HONEY PARK LLC; ) | |
| MARIAH MARIE LLC; UNION GL ) | |
| PARK LLC; GOVERNORS ) | |
| MANAGEMENT LLC; and ) | |
| THE PRUDENTIAL REALTY LLC; ) | |
| ) | |
| Respondents. ) | |

**UNITED STATES' MOTION FOR AN ORDER TO SHOW CAUSE AND
FOR SUMMARY ENFORCEMENT OF CIVIL INVESTIGATIVE DEMANDS**

Pursuant to § 3733(j)(3) of the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, the United States respectfully moves for an order requiring Respondents Alliance Park LLC, Brickyard Place LLC, Centex Management LLC, Deerwood Point LLC, Honey Park LLC, Mariah Marie LLC, Union GL Park LLC, Governors Management LLC, and the Prudential Realty LLC, to show cause why the Court should not enter an Order compelling them to comply with Civil Investigative Demand (CID) Nos. 2023-012, 2023-013, 2023-014, 2023-015, 2023-016, 2023-019, 2023-022, 2023-023, and 2023-024 issued to them by the United States Attorney.  For the reasons set forth below, the Court should grant the United States' Petition for Enforcement and order Respondents to show cause why they should not be compelled to respond to the CIDs,

supported by sworn certificates of compliance.

## STATUTORY BACKGROUND

"The False Claims Act is the government's primary litigative tool for the recovery of losses sustained as the result of fraud against the government." *Avco Corp. v. U.S. Dep't of Justice*, 884 F.2d 621, 622 (D.C. Cir. 1989). The statute prohibits any person from "knowingly" presenting "a false or fraudulent claim for payment or approval" to the federal government. 31 U.S.C. § 3729(a)(1). The Act provides that the Attorney General "diligently shall investigate a violation" of the Act and may bring a civil action if a person has committed a violation. 31 U.S.C.§ 3730(a).

One of the principal tools facilitating the government's FCA investigations is the CID, which requires the recipient to produce documents, answer interrogatories, or give oral testimony. The rules governing the CID are set forth in 31 U.S.C. § 3733, which authorizes the Attorney General or designee to issue a CID before commencing a civil proceeding. 31 U.S.C. § 3733(a)(1). When producing documents in response to a CID, the responses "shall be made under a sworn certificate … stat[ing] that all of the documentary material required by the demand and in the possession, custody, or control of the person to whom the demand is directed has been produced and made available to the false claims law investigator identified in the demand." 31 U.S.C. § 3733(f)(1). Similarly, "[e]ach interrogatory in a [CID] … shall be answered separately and fully in writing under oath and shall be submitted under a sworn certificate … stat[ing] that all information required by the demand

and in the possession, custody, control, or knowledge of the person to whom the demand is directed has been submitted." 31 U.S.C. § 3733(g).

The statute contemplates that the recipient of the CID will comply, but it also permits the United States to seek judicial enforcement "[w]henever any person fails to comply with any civil investigative demand issued under subsection (a)." 31 U.S.C. § 3733(j)(1). Failure to comply with an order enforcing a CID may be punished as contempt of the court. 31 U.S.C. § 3733(j)(5).

## FACTUAL BACKGROUND

The United States Attorney's Office for the Southern District of Georgia is investigating whether the FCA is being, or has been, violated by House of Prayer Christian Churches of America, Inc. (HOPCC), House of Prayer Bible Seminary (HOPBS), or those acting on their behalf, in connection with claims for education and housing benefits submitted to the Department of Veterans Affairs. The government's investigation to date indicates that the Respondents may have engaged in numerous real estate transactions with members or students of HOPCC and HOPBS. Some of these properties are believed to have housed individuals receiving housing allowances through the Post-9/11 GI Bill, *see* 38 U.S.C. § 3313(g), or alternatively properties that may have been purchased through VA-guaranteed home loans, *see* 38 U.S.C. § 3702, *et seq.*, and thereafter transferred to Respondents. The Court previously enforced two other CIDs issued in connection with the same investigation. *See United States v. House of Prayer Bible Seminary*, No. 4:23-cv-91 (S.D. Ga.), Doc. 18.

The United States Attorney issued CIDs containing interrogatories and

document requests to Respondents on October 19, 2023, and November 1, 2023. The contents largely were the same; the CIDs sought information regarding Respondents' corporate structure, their real estate holdings, where they bank, and their dealings with HOPCC or HOPBS. Service of the CIDs that are the subject of this petition was accomplished between October 25, 2023, and February 29, 2024.

An attorney representing Respondents contacted the United States on February 1, 2024, advising that the bulk of the responsive documents had been filed with the Georgia Secretary State. *See* Exhibit 1, Email Communications between AUSA Bradford C. Patrick and Scott Grubman. While counsel initially offered to produce those documents, he later objected to production because those documents were publicly available. Counsel advised that, with the exception of one document possessed by Respondent The Prudential Realty, none of the Respondents had any responsive documents aside from what is on file with the Secretary of State. As for the interrogatories contained in the CIDs, Respondents' counsel provided a blanket objection to answering them on the grounds that they may incriminate another one of his clients, Anthony Oloans. Respondents' counsel also alleged that the CIDs represented an "inappropriate use of the CID power" because he believed "the CIDs were only issued after the DOJ ran into issues on the criminal side with witnesses asserting their privilege before the grand jury." Counsel refused to provide certificates of compliance as to the document requests on the same basis. To date, none of the Respondents have produced any documents or information responsive to the CIDs, including the nonpublic document held by Respondent The Prudential Realty.

## ARGUMENT

The FCA provides that when a CID recipient fails to comply with a CID, the United States may file a petition to enforce the CID in the appropriate United States District Court. 31 U.S.C. § 3733(j). CIDs are administrative subpoenas and may be enforced like any other administrative subpoena. *See United States v. Markwood*, 48 F.3d 969, 975-76 (6th Cir. 1995) (finding that a CID issued under the FCA is an administrative subpoena); *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1087 (D.C. Cir. 1992) (acknowledging that a CID issued by the Federal Trade Commission is an administrative subpoena).

Enforcement proceedings necessarily must be limited in scope to protect "the important governmental interest in the expeditious investigation of possible unlawful activity." *Markwood*, 48 F.3d at 979. Thus, the "role of a district court in a proceeding to enforce an administrative subpoena is sharply limited; inquiry is appropriate only into whether the evidence sought is material and relevant to a lawful purpose of the agency." *EEOC v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991). "The measure of relevance used in subpoena enforcement actions is quite broad." *United States v. Florida Azalea Specialists*, 19 F.3d 620, 624 (11th Cir. 1994). And because of the limited nature of the court's role in administrative subpoena enforcement proceedings, a court simply "inquire[s] into (1) whether the administrative investigation is within the agency's authority, (2) whether the agency's demand is too indefinite, and (3) whether the information sought is reasonably relevant." *EEOC v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996) (citing *Florida Azalea*

5

*Specialists*, 19 F.3d at 622-23). Such a subpoena should be enforced unless it was issued for some improper purpose that would abuse the court's process, such as harassment or bad faith. *See Markwood*, 48 F.3d at 978 (citing *United States v. LaSalle Nat'l Bank*, 437 U.S. 298 (1978)).

The elements needed for enforcement all exist here. The CIDs plainly are within the agency's authority. The Department of Justice is authorized to investigate violations of the FCA and issue CIDs to aid in such investigations. *See Markwood*, 48 F.3d at 975-76. Further, the United States Attorney is authorized to issue CIDs by delegation. *See* 28 C.F.R. Part 0, Subpart Y, App'x, Dir. No. 1-15. As explained above, the United States is engaged in a civil investigation under the FCA to determine whether HOPCC, HOPBS, or those acting on their behalf, submitted or caused the submission of false claims for VA education and housing benefits.

Second, the material sought in the CIDs is not indefinite. The document requests and the interrogatories are reasonably clear and defined. Respondents' counsel has not asserted any objection to the contrary.

Third, the material sought is reasonably relevant. Relevance is broadly interpreted in the context of enforcing administrative subpoenas. *FTC v. Texaco, Inc.*, 555 F.2d 862, 872 (D.C. Cir. 1977); *see also Inspector Gen. of U.S. Dep't of Agriculture v. Griffin*, 972 F. Supp. 676, 678 (M.D. Ga. 1997). "In this regard, so long as the information sought is not 'plainly incompetent or irrelevant to any lawful purpose' of the [DOJ], the Court is obliged to enforce the subpoena." *Griffin*, 972 F.

Supp. at 679. The agency's appraisal of relevancy must be accepted "as long as it is not 'obviously wrong.'" *United States v. Hunton & Williams,* 952 F. Supp. 843, 854 (D.D.C. 1997) (citations omitted). *See also In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995) (same). Here, the information and documents sought in the CIDs are relevant to understanding Respondents' relationship to HOPCC and HOPBS, as well as their members and students, and how recipients of VA benefits used them, including at properties that may have been owned by or transferred to Respondents.

Respondents have the burden—and "a heavy one" at that—to show the CIDs were issued for improper purposes. *See Matter of Plavin*, No. 1:15-cv-04286, 2016 WL 11775142, at *4, 6 (N.D. Ga. Feb. 4, 2016) (reviewing authorities), *adopted by* 2016 WL 11775141 (N.D. Ga. Apr. 6, 2016). Respondents have voiced two objections to the CIDs. First, Respondents assert that responding to the CIDs, whether by supplying a sworn certification that responsive documents have been provided[1] or answering any of the interrogatories, would impermissibly infringe on the Fifth Amendment rights of Anthony Oloans. Second, they argue the CIDs are an abuse of authority

---

[1] Respondents' counsel's representation that the only documents responsive to the CIDs, aside from one unproduced document possessed by Respondent The Prudential Realty, does not satisfy Respondents' obligations as to the CIDs' document requests because it is not a sworn certificate required by 31 U.S.C. § 3733(f)(1). Among other items, the CIDs sought records concerning Respondents' real estate holdings. The government believes counsel's representation is not accurate, as property records show that individuals affiliated with HOPCC and HOPBS have transferred properties to Respondents. *See, e.g.*, Exhibit 2, Liberty County Property Record Card for 400 Club Drive (indicating transfer by Dennis Nostrant, Administrative Officer for HOPCC, to Respondent Brickyard Place LLC on February 20, 2021).

because, they allege, individuals have asserted privileges before the grand jury in a parallel criminal investigation.

Respondents' Fifth Amendment argument should be rejected. Corporations do not have Fifth Amendment rights to invoke, nor may they invoke the rights of individuals associated with the corporate entity. This rule flows from the principle that "individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations." *United States v. White*, 322 U.S. 694, 699 (1944). When a corporate custodian produces records or answers interrogatories pursuant to a CID, "the act is deemed one of the corporation and not the individual." *Braswell v. United States*, 487 U.S. 99, 118 (1988).

An individual who holds company documents does so "in a representative rather than in a personal capacity." *White*, 322 U.S. at 699. A corporate representative does not perform a testimonial act by providing corporate records to an agent selected by the corporation. *In re Grand Jury No. 86-3 (Will Roberts Corp.)*, 816 F.2d 569, 574 (11th Cir. 1987). Therefore, the Supreme Court has held repeatedly that "a corporate custodian … may not resist a subpoena for corporate records on Fifth Amendment grounds." *Braswell*, 487 U.S. at 108, 110-13. That is true regardless of whether a corporate custodian can "show that his act of production would entail testimonial self-incrimination." *Id.* at 104. *See also Will Roberts Corp.*, 816 F.2d at 574 ("[E]ven if the

situation is unusual and a corporation's custodian of records would incriminate himself if he were to act to produce the company's records, this still does not relieve the corporation of its continuing obligation to produce the subpoenaed documents."). Put bluntly, "[t]here simply is no situation in which the fifth amendment would prevent a corporation from producing corporate records, for the corporation itself has no fifth amendment privilege." *Id.* (quoting *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 57 (2d Cir. 1985)).

While the cases cited above typically involve the rights of individuals who own or direct the affairs of the corporations, Respondents' arguments are all the weaker because, with two exceptions, public filings with the Georgia Secretary of State do not reveal what if any connection Oloans might have to the Respondents.[2] Indeed, Respondents have invoked the Fifth Amendment as a basis to refuse to disclose to the United States the identities of their owners, officers, and employees. Respondents cannot attempt to invoke Oloans's Fifth Amendment rights on one hand yet refuse to disclose what if any relationship they have with Oloans on the other.

This is one example of another problem with Respondents' objection. It represents an unlawful blanket assertion of the right against self-incrimination. *See United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir. 1969). A party seeking to

---

[2] Respondent Centex Management's 2024 annual registration identifies Oloans as a member. *See* Exhibit 3, Centex Management LLC 2024 Annual Registration. Respondent Mariah Marie identified Oloans as its registered agent when it organized in 2008, *see* Exhibit 4, Mariah Marie LLC Certificate of Organization, but changed its registered agent from Oloans to Matthew Reese in 2010, *see* Exhibit 5, Mariah Marie LLC 2010 Annual Registration.

9

invoke the privilege must do so on a question-by-question basis and provide "specific information such that a court might decide whether the privilege has been properly asserted as to each." *Odom v. Roberts*, 337 F.R.D. 353, 357 (N.D. Fla. 2020) (cleaned up). Respondents have not made any attempt to show why responses to any specific requests might incriminate them. Indeed, even if Respondents could somehow take advantage of an individual's Fifth Amendment rights, they refuse to provide essential facts regarding their relationship with Oloans needed to assess the validity of their privilege assertion.

To meet their obligations under the CIDs, Respondents must designate a corporate representative to provide documents, answer interrogatories, certify the accuracy and completeness of those responses. Whatever his connection to Respondents, Oloans is not required to serve as the corporate representative for any of the Respondents. "In fifth amendment terms, the act of having to appoint an agent, while compelled, is not testimonial and therefore does not implicate the fifth amendment." *Will Roberts Corp.*, 816 F.2d at 574. This principle applies just as much to interrogatories as it does to document requests. *See Kordel*, 397 U.S. at 8 ("[S]ervice of the interrogatories obliged the corporation to appoint an agent who could, without fear of self-incrimination, furnish such requested information as was available to the corporation."); *FTC v. Lexium Int'l, LLC*, No. 2:17-cv-30, 2017 WL 2664360, at *10 (M.D. Fla. June 1, 2017) (company must "appoint any officer, agent, employee, or even its attorney to answer the interrogatories"); *City of Chicago v. Wolf*, No. 91-cv-8161, 1993 WL 177020, at *1 (N.D. Ill. May 21, 1993) (corporate entities "can be compelled

to answer questions through an agent who will not invoke the [Fifth Amendment] privilege.").

Importantly though, Respondents cannot meet their obligations simply by designating a representative who is ignorant to the whereabouts of responsive information. Corporate representatives with Fifth Amendment concerns still must "aid the appointed custodian in his search for the demanded records." *Braswell*, 487 U.S. at 116-17 (characterizing the argument that a corporation meets its obligations by appointing a custodian to "be sent on an unguided search" as a "chimera"). *See also In re Sealed Case*, 877 F.2d 83, 86 (D.C. Cir. 1989) (rejecting argument that corporation's president, CEO, and majority shareholder could "simply designate as official custodian a person ignorant of the critical records' existence and location"); *In re Grand Jury Proceedings*, 708 F. Supp. 492, 493-94 (E.D.N.Y. 1988) ("The corporation has not fulfilled its obligation if it produces an agent that it has sent on an unguided search for records.").

Respondents' second objection, that the CIDs are an abuse of authority, fares no better. Respondents allege, without evidence, that unnamed individuals have invoked privileges, presumably their Fifth Amendment right against self-incrimination, before a grand jury in a related criminal investigation. Respondents will be unable to prove this occurred. Respondents' argument is a puzzling one, because Fed. R. Crim. P. 6(e) ordinarily would prohibit dissemination of matters occurring before the grand jury such that civil investigators may not know whether

11

such invocations had occurred, and thus whether the use of CIDs were permissible. Indeed, one of the chief reasons Congress allowed for CIDs in the False Claims Act context was to empower the government's investigation of civil claims irrespective of what might have occurred before the grand jury. *See Markwood*, 48 F.3d at 984 (describing legislative history).

The premise of Respondents' argument is that CIDs should not be enforced where a criminal investigation is underway as to related conduct. That cannot be true because the Supreme Court has approved of such parallel proceedings for more than 50 years. *See United States v. Kordel*, 397 U.S. 1, 12 (1970). Communication among civil and criminal prosecution teams is so essential to the mission of the Department of Justice that it is part of its policy. *See* Justice Manual § 1.1200 ("stress[ing] early, effective, and regular communication between criminal, civil, and agency attorneys to the fullest extent appropriate to the case and permissible by law"); *see also United States v. Moses*, 219 F. App'x 847, 849 (11th Cir. 2007) ("It is well established that the federal government may pursue civil and criminal actions either 'simultaneously or successively.'"). Neither the Supreme Court nor the Eleventh Circuit have set aside a CID or administrative subpoena, or otherwise invalidated a civil proceeding because evidence obtained civilly was relevant to, used in, or discussed as part of a criminal inquiry. Once again, *Kordel* found such uses appropriate, at least where there had been no indication "the government brought a civil action solely to obtain evidence for its criminal prosecution." 397 U.S. at 12. Courts have focused on the deliberate use of the word "solely." *See Kabakibou*, 522 F. Supp. 3d at 1311. Even if the sought evidence

may be useful in other proceedings, "enforcement of a subpoena is called for so long as proper purposes exist as well." *FTC v. Carter*, 636 F.2d 781, 789 (D.C. Cir. 1980). *Accord*, *In re McVane*, 44 F.3d at 1139.

Thus, Respondents' assertion that one or more grand jury witnesses invoked a privilege is immaterial to the governing standard, even if it were accurate. To prevent enforcement, Respondents would need to prove the CIDs lacked a legitimate purpose to the government's False Claims Act investigation. The government, on the other hand, need not provide extensive details of its investigation to rebut an unsupported accusation that it was motivated by improper considerations. *See United States v. Kabakibou*, 522 F. Supp. 3d 1307, 1311 (N.D. Ga. 2020) (government did not need to "reveal the nature of the criminal case or produce the affidavit supporting the search warrant as a condition of Respondent's compliance with the CID."). Nothing in the extensive caselaw following *Kordel* suggests that an invocation of the Fifth Amendment before the grand jury would lead to a different analysis, much less one that would lead to the sweeping result of halting a civil investigation altogether.

The CIDs at issue were issued in connection with the government's civil investigation. As explained, the government is investigating whether HOPBS, HOPCC, or individuals acting on behalf of them, submitted false claims or caused the submission of false claims for education and housing benefits made available by the Department of Veterans Affairs. The CIDs at issue explore Respondents' relationship to HOPBS and HOPCC and seek information regarding Respondents' real estate

transactions. The government's investigation thus far suggests that Respondents have been involved in numerous real estate transactions with members of HOPBS and HOPCC, which may include locations where recipients of housing allowances provided through Veterans Affairs programs have resided, or which were previously purchased through VA Home Loans. Thus, Respondents' real estate holdings and transactions, possible rental agreements with beneficiaries of Veterans Affairs housing allowances, as well as Respondents' interactions with HOPCC, HOPBS, or individuals associated with those entities, are relevant to the civil investigation. Of course, information related to Respondents' corporate structure provides context for these relevant subjects. Simply because responses to the CIDs may share relevance to a parallel criminal investigation does not mean the CIDs were issued solely to further the criminal investigation. The CIDs' reasonable connection to a legitimate objective of the civil investigation defeats Respondents' objection.

Respondents' objections to the CIDs therefore lack merit.

## CONCLUSION

The Court should grant the Petition and order Respondents to show cause why they should not be compelled to respond to CID No. 2023-012, 2023-013, 2023-014, 2023-015, 2023-016, 2023-019, 2023-022, 2023-023, and 2023-024, supported by sworn certificates of compliance, within 10 days.

JILL E. STEINBERG
United States Attorney
Southern District of Georgia

*/s/ Bradford C. Patrick*
Bradford C. Patrick
Assistant United States Attorney
South Carolina Bar No. 102092
Post Office Box 8970
Savannah, Georgia 31412
Telephone: (912) 652-4422
Facsimile: (912) 652-4227
Email: Bradford.Patrick@usdoj.gov
