IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v.   ) | No. 4:24-CV-92 |
| ) | |
| ALLIANCE PARK LLC; BRICKYARD ) | |
| PLACE LLC; CENTEX ) | |
| MANAGEMENT, LLC; DEERWOOD ) | |
| POINT LLC; HONEY PARK LLC; ) | |
| MARIAH MARIE LLC; UNION GL ) | |
| PARK LLC; GOVERNORS ) | |
| MANAGEMENT LLC; and ) | |
| THE PRUDENTIAL REALTY LLC; ) | |
| ) | |
| Respondents. ) | |

**RESPONDENTS' RESPONSE TO UNITED STATES' MOTION FOR AN ORDER TO SHOW CAUSE AND FOR SUMMARY ENFORCEMENT OF CIVIL INVESTIGATIVE DEMANDS**

The question presented to the Court in this case is simple: whether the Civil Division of the United States Department of Justice may utilize its power to issue Civil Investigative Demands (CIDs) under the False Claims Act (FCA) to get around a criminal target's right to due process and against self-incrimination.

1

The government has been investigating the House of Prayer Christian Churches of America, Inc. and House of Prayer Bible Seminary ("House of Prayer") for well over a year and has sent numerous grand jury subpoenas for testimony to various individuals allegedly associated with House of Prayer.

After multiple witnesses invoked their constitutional privilege against self-incrimination, the DOJ decided to take a different approach: instead of either (a) respecting the constitutional rights of those they investigate, or (b) immunizing witnesses, which would obliterate the witness' Fifth Amendment privilege, the DOJ instead decided to propound CID interrogatories to various Limited Liability Companies (LLCs), including to Respondents, Alliance Park LLC, Brickyard Place LLC, Centex Management, LLC, Deerwood Point LLC, Honey Park LLC, Mariah Marie LLC, Union GL Park LLC, Governors Management LLC, and The Prudential Realty LLC.

Importantly, unlike the subpoenas at issue in most of the cases the government cites in its brief, which all involved subpoenas for *documents*, the CIDs issued by the government to Respondents in this case also contain interrogatories, requiring the recipient to answer them under oath. As outlined in more detail below, those interrogatories are substantive in nature, and cover the same topics that are at issue in the DOJ's ongoing criminal case; in fact, they contain some of the same questions

that the DOJ's attorneys and investigators have been attempting to ask witnesses as part of their ongoing criminal investigation.

## I.     Factual Background

In June of 2022, the Federal Bureau of Investigation raided House of Prayer churches in Georgia, Washington, North Carolina, and Texas. *See* USA Today News Article, attached hereto as **Exhibit 1**. The United States subsequently filed a forfeiture motion in the Southern District of Georgia in January 2023. *See United States of America v. $115,800.00 In U.S. Currency Funds Seized From South Georgia Bank Account Ending in 0378, et al.* (4:23-CV-00009). Since initiating its investigation, and continuing to the present, the United States (and, in particular, the United States Attorney's Office for the Southern District of Georgia) has issued grand jury subpoenas to numerous individuals allegedly connected to the House of Prayer, including to Mr. Oloans' wife, who declined to testify based upon her Fifth Amendment and spousal privileges. *See* email communications, attached hereto as **Exhibit 2**. Mr. Oloans is believed to be a target and/or subject of the United States' criminal investigation.

In October and November 2023, after repeatedly failing to get the answers it wanted as part of the grand jury process due to witness' lawful and proper invocation of their Fifth Amendment privilege, the government issued the CIDs at issue.

### a. Document Requests

In addition to the interrogatories, which will be discussed in more detail below, each CID requires the recipient to produce certain documents. After receiving the CIDs, undersigned counsel for Respondents promptly informed the government that, other than certain publicly available documents (to be discussed more below), there was only one document to be produced.[1]

As undersigned counsel informed counsel for the government several times prior to their filing of this petition, the only other responsive documents consist of certain form certificates that are required to be filed with the Georgia Secretary of State's Office each year. Neither Respondents nor undersigned counsel have separate copies of any of these documents, but as undersigned counsel also informed counsel for the government, the documents are equally accessible to the government by simply going on the Georgia Secretary of State's public website and downloading them, which is exactly what undersigned counsel would have to do to produce them.

---

[1] Due to an inadvertent oversight by counsel for Respondents, the sole non-publicly available responsive document was not produced prior to the government's filing. Undersigned counsel will produce this document contemporaneously upon filing of this response.

4

Despite these documents being publicly available and equally accessible to the government, counsel for the government insisted that they be produced.

Notwithstanding the fact that the government's use of a CID to require a recipient to print out documents from a publicly-available website is questionable, to say the very least, for the sake of compromise and so that the Court can focus on the real issue in this case—the interrogatories—Respondents will produce these publicly-available documents contemporaneous with the filing of this response.

### b. Interrogatories

Each CID contains the following substantially identical interrogatories:

1. Identify all of Your current and former owners, shareholders, or unit-holders, including:
   a. for each individual owner, shareholder, or unit-holder,
      i. their name,
      ii. their date of birth,
      iii. their home address,
      iv. their business address,
      v. their social security number,
      vi. the class of their investment, and
      vii. the dates they held such an interest.
   b. for each company, corporation, partnership, proprietorship, trust, or other entity-based owner,
      i. the entity's name,
      ii. the entity's address,
      iii. the class of the entity's investment, and
      iv. all individuals You know to have a direct or indirect interest in such entity.
2. Identify all addresses where You conduct business and, for each location, summarize the nature of the business conducted there.

5

3. Identify Your directors and corporate officers, both former and current, including for each individual:
   a. their name,
   b. their date of birth,
   c. their home address,
   d. their business address,
   e. their social security number,
   f. their title,
   g. the dates held such title, and
   h. a descriptionof all powers, authorities, duties, and obligations associated with such title.
4. Identify all of Your current and former employees, contractors, and volunteers.
5. Identify Your current and former corporate parents, subsidiaries, and affiliates, to the extent such entities exist, and provide information sufficient to show the corporate structure of any such entities in relation to You.
6. Identify all investments and capital contributions, including the person or entity that made the investment.
7. Identify any real property in which You have or have had an ownership, leasehold, mortgage, or security interest, including for each such property identify:
   a. the nature of Your interest,
   b. the date You acquired such an interest,
   c. the seller,
   d. manner of sale,
   e. the purchase price you paid to acquire such interest,
   f. the terms of any payments due by or owed to you in connection with Your interest, and
   g. if You have sold or otherwise disposed of the interest, the date and terms under which You sold or disposed of the interest.
8. Identify by name, address, and telephone number each and every domestic and foreign bank and/or financial institution in which You have or had an account, and provide the account number, type of account, and account balance.

After reasonable investigation, undersigned counsel informed counsel for the government that, in light of the Fifth Amendment to the United States Constitution, there was no individual who could respond to these interrogatories. While the government demanded that Mr. Oloans do so, Mr. Oloans has, and continues to, assert his Fifth Amendment privilege, and declines to respond to any of the government's propounded questions, thereby triggering the instant action.

## II.     Legal Standard

"The Fifth Amendment declares in part that no person shall be compelled in any Criminal Case to be a witness against himself." *Hoffman v. United States*, 341 U.S. 479, 485–86 (1951) (internal quotations omitted). It is axiomatic that the Fifth Amendment "must be accorded liberal construction in favor of the right it was intended to secure." *Id.* at 486. "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Id.* Importantly, "[t]he immediate and potential evils of compulsory self-disclosure transcend any difficulties that the exercise of the privilege may impose on society in the detection and prosecution of crime." *Id.* at 490 (internal quotations omitted).

"Trial courts have broad discretion to resolve self-incrimination claims." *United States v. Smith*, 429 F. App'x 840, 843 (11th Cir. 2011). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question ... might be dangerous because injurious disclosure could result." *Id*. The individual asserting his Fifth Amendment privilege only needs to explain his reasonable cause to apprehend danger "in a limited fashion." *In re Keller Fin. Servs. of Fla., Inc.*, 259 B.R. 391, 400 (Bankr. M.D. Fla. 2000).

Most of the government's briefing is dedicated to the proposition that corporations do not have Fifth Amendment privilege, a proposition that Respondents readily concede, as they must. That being said, the government's lengthy briefing completely ignores the equally undeniable fact that corporations cannot respond to interrogatories, only natural persons can do that. And, of course, natural persons, including Mr. Oloans, *do* have such privilege. In fact, the Supreme Court of the United States has made clear that a person is not barred from invoking his Fifth Amendment privilege against providing answers to interrogatories directed at a corporation just because the corporation has no privilege of its own. *United States v. Kordel*, 397 U.S. 1 (1970).

### III. Argument

There can be no serious question that Mr. Oloans—or any other individual who might conceivably respond to the interrogatories in question—enjoy a Fifth Amendment privilege. There can also be no serious question that the government could not compel a witness to answer questions as part of its criminal investigation over that witness' invocation of the Fifth Amendment privilege, without first immunizing the witness, as they are empowered to do. *See* 18 U.S.C. § 6002.

With those two undeniable truths established, it must also follow that the government cannot be allowed to use procedural maneuvering to circumvent the Fifth Amendment and compel responses to substantive interrogatories, all of which seek sworn responses to questions that are central to the government's ongoing criminal investigation.

The Supreme Court's decision in *United States v. Kordel* is directly on point and controlling. The defendants in *Kordel* were officers of a corporation. 397 U.S. at 2. As part of a civil lawsuit filed by the government during the pendency of its criminal investigation, the government in *Kordel* issued interrogatories to the corporation. *Id.* at 3. After receiving the interrogatories, counsel for the corporation petitioned the district court to stay the civil proceedings until the criminal investigation was over. *Id.* at 7. The district court denied that request, expressly

noting that the corporation could simply refuse to respond to the interrogatories and, of course, deal with whatever civil consequence resulted from such refusal.  *Id.*

Reviewing the case, the Supreme Court held that the defendant in question (the corporation's vice president) "need not have answered the interrogatories. Without question he could have invoked his Fifth Amendment privilege against compulsory self-incrimination." *Id.*  The Court continued: "***Surely [the defendant] was not barred from asserting his privilege simply because the corporation had no privilege of its own***, or because the proceeding in which the Government sought information was civil rather than criminal in character." *Id.* at 7-8 (emphasis added).

While the Court in *Kordel* held that the corporation should "appoint an agent who could, without fear of self-incrimination, furnish such requested information as was available to the corporation," the Court also expressly envisioned a scenario like this one—"where no one can answer the interrogatories addressed to the corporation without subjecting himself to a 'real and appreciable' risk of self-incrimination." *Id.* at 9.  In that situation, the Court suggested that "the appropriate remedy would be a protective order . . . postponing civil discovery until termination of the criminal action." *Id.*

Respondents acknowledge that, under the analysis from *Kordel*, it is Respondents' burden to show that there is no authorized person who could answer

10

the interrogatories without the possibility of self-incrimination. *Id.* Because Respondents cannot meet this burden without divulging information that would itself be subject to the Fifth Amendment privilege, to the extent the Court requires additional information to decide this motion, Respondents respectfully request that the Court hold an *ex parte* hearing where Respondents can provide such information to the Court *in camera*, as allowing the government to be privy to this information would defeat the entire purpose of the Fifth Amendment.

Notably, the government cites *Kordel* multiple times throughout its brief, but fails to cite the language cited above, which clearly governs the case at bar. Instead, the government cites a myriad of other cases that deal with a corporation's obligation to appoint a custodian to produce documents responsive to a subpoena, which of course are different than interrogatories.

For example, in its brief, the government states the following: "When a corporate custodian produces records or answers interrogatories pursuant to a CID, 'the act is deemed one of the corporation and not the individual.'" *Braswell v. United States*, 487 U.S. 99, 118 (1988)." [Dkt. 5 at 8.] However, that's simply not what *Braswell* says. Instead, *Braswell* dealt *only* with document requests, and did not address interrogatory responses at all, as they do not appear to have been at issue in that case. The same can be said about the other cases cited by the government in its

brief. *See United States v. White*, 322 U.S. 694 (1944) (dealing only with document requests); *In re Grand Jury No. 86-3 (Will Roberts Corp.)*, 816 F.2d 569, 574 (11th Cir. 1987) (same).

The government now contends that Mr. Oloans' relationship to Respondents is not established and argues that Respondents should be required to disclose their connection to Mr. Oloans before he can assert his Fifth Amendment Privilege. This, of course, is circular reasoning at best; as disclosing such information would defeat the very purpose of the Fifth Amendment privilege. As the Supreme Court held in *Hoffman v. United States*, if an individual "were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee." 341 U.S. 479, 486 (1951). Instead,

> [t]o sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, at a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.

*Id.* at 487.

Accordingly, if the Court requires any more information to make a final determination, it should do so *in camera* and *ex parte*.

## CONCLUSION

As the United States Supreme Court held in the landmark case of *Miranda v. Arizona*, the "constitutional foundation underlying the [Fifth Amendment] privilege is the respect a government—state or federal—must accord to the dignity and integrity of its citizens." 384 U.S. 436, 460. To allow the government to circumvent the Fifth Amendment by propounding substantive interrogatories to an LLC in the midst of a criminal investigation would, in many cases including this one, have the effect of eviscerating the privilege. The government cannot be permitted to destroy the privilege.

Accordingly, Respondents respectfully request the Court deny the government's petition to enforce the CIDs.

Respectfully submitted, this 22nd day of July, 2024.

                                                                CHILIVIS GRUBMAN

                                                                */s/ Scott R. Grubman*
                                                                Scott R. Grubman | Ga. Bar No. 317011
                                                                Brittany M. Cambre | Ga. Bar No. 350793
                                                                (Pro Hac Vice forthcoming)
                                                                Brandi Z. Murrain| Ga. Bar No.167467
                                                                (Pro Hac Vice forthcoming)
                                                                1834 Independence Sq.
                                                                Atlanta, GA 30338
                                                                P: (404) 233-4171
                                                                F: (404) 261-2843
                                                                sgrubman@cglawfirm.com

bcambre@cglawfirm.com
bmurrain@cglawfirm.com
*Attorneys for Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2024, I electronically filed the foregoing Response to the United States' Motion For An Order to Show Cause and Petition to Enforce Civil Investigative Demands with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Bradford C. Patrick, Esq.
Assistant United States Attorney
U.S. Attorney's Office
P.O. Box 8970
Savannah, GA 31412
bradford.patrick@usdoj.gov

*/s/ Scott R. Grubman*
Scott R. Grubman
Georgia Bar No. 317011
Chilivis Grubman, LLP
1834 Independence Sq.
Atlanta, GA 30338
P: (404) 233-4171
F: (404) 261-2843
sgrubman@cglawfirm.com