IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:24-CV-92 |
| | ) |
| ALLIANCE PARK LLC; BRICKYARD PLACE LLC; CENTEX MANAGEMENT, LLC; DEERWOOD POINT LLC; HONEY PARK LLC; MARIAH MARIE LLC; UNION GL PARK LLC; GOVERNORS MANAGEMENT LLC; and THE PRUDENTIAL REALTY LLC; | ) |
| | ) |
| Respondents. | ) |

**RESPONDENTS' SURREPLY**

Respondents hereby file this surreply, to bring to the Court's attention certain information that arose only after Respondents filed their initial response brief, and to briefly address certain arguments raised in the government's reply brief.

**I.   The CIDs Appear to be an Attempt Around Invocation of the Fifth Amendment Privilege.**

As discussed in more detail in Respondents' response brief, the timing and circumstances surrounding the issuance of the instant CIDs suggest that the government issued these CIDs to obtain information that it was unable to obtain

through its ongoing criminal investigation. This is not a proper use of the CID power.

In its reply brief, the government gives short shrift to the fact that it has been conducting a criminal investigation into the House of Prayer for over two years, that it has issued numerous grand jury subpoenas in connection with that investigation, and that numerous witnesses have invoked their Fifth Amendment privilege in response to those subpoenas. And to be clear, this all happened *before* the government issued the instant CIDs.

To further illustrate the interconnectedness of the government's CIDs and ongoing criminal investigation, on August 4, 2024 – the day before the government filed its reply brief in the instant matter (in which it claimed that there was absolutely no connection between the issuance of the CIDs and the criminal investigation) – the same United States Attorney's Office (albeit a different Assistant United States Attorney) issued a grand jury subpoena to Business Filings Incorporated, which is the Registered Agent for several of the Respondents; specifically, Alliance G Park LLC, Brickyard Place, LLC, Club Drive LLC, Union G L Park LLC, and White Circle LCC.

The subpoena to Business Filings is broad, and seeks virtually all corporate records related to Respondents and other entities for a nearly 6-year period

(December 31, 2017 to present).[1] Given the relevant date range of the recent grand jury subpoena and the types of information sought therein, it is abundantly clear that the criminal investigation subsumes the entirety of the information sought by the government in the CIDs at issue. It would be quite the coincidence if, after Respondents filed their response brief in this case, the criminal division of the same United States Attorney's Office independently, and with absolutely no coordination, decided to issue a grand jury subpoena seeking nearly identical records – and more – related to the very same companies.

In its reply, the government seems to imply that only one witness – Ms. Tamara Escudero (who is Mr. Oloans' wife) – had invoked the Fifth Amendment privilege in response to a grand jury subpoena related to the House of Prayer criminal investigation. However, this is simply not true. Even before the issuance of the instant CIDs, numerous witnesses had invoked their Fifth Amendment privilege against self-incrimination.

In 2023, the government filed an action similar to this one, seeking to enforce compliance with CIDs issued to House of Prayer. *United States v. House of Prayer Bible Seminary*, No. 4:23-cv-91. The pleadings in that case make clear that the government's criminal investigation was under way well before the instant CIDs

---

[1] Given the sensitive nature of the subpoena, Respondents have not attached it to this surreply. However, Respondents are in possession of this subpoena, and can submit it to the Court upon request.

were issued in October 2023. As outlined in pleadings in that case, after the government executed search warrants in June 2022, certain government representatives threatened that failure to execute a CID certificate of compliance would result in criminal obstruction charges in a forthcoming indictment. *See* House of Prayer Case, Dkt. 38 at 4-5.

It appears that the government's motive in issuing the instant CIDs is to obtain information that it was unable to obtain as part of its ongoing criminal investigation, in large part due to numerous witnesses invoking their Fifth Amendment privilege against self-incrimination. This is not only an improper use of the False Claims Act's CID provisions, but also an attempt to deprive the individuals associated with House of Prayer of their constitutional rights and privileges. Accordingly, the government's Motion for an Order to Show Cause should be denied.

## II. The Certificates of Compliance Also Implicate the Fifth Amendment.

Despite the fact that Respondents have produced all known documents responsive to the CIDs, the government continues to assert that Respondents must also have someone sign the Certificates of Compliance attached to each CID.

As is the case with the CID interrogatories, however, Respondents (all LLCs) cannot sign the Certificates of Compliance. Instead, some individual associated with Respondents would be required to do that, but doing so would require that individual to waive his or her Fifth Amendment privilege.

4

The Certificate of Compliance reads as follows:

**CERTIFICATE OF COMPLIANCE**

I have responsibility for producing the documents requested in Civil Investigative Demand No. CID 2023-022. I hereby certify that all the materials required by that Civil Investigative Demand that are in the possession, custody, or control of the entities to whom the Demand is directed have been submitted to the designated False Claims Act investigator. If any such information has not been furnished because of a lawful objection, the objection to the interrogatory and the reasons for the objection have been stated with particularity in writing herein.

Signature  _____

Printed Name  _____

Title  _____

These attestations must be made under oath before a notary.

It is clear, however, that these sworn statements would implicate the signatory's Fifth Amendment privilege, as whoever signed the document would be admitting, at minimum, that they were affiliated with Respondent LLCs (all of which we know are at issue in the government's ongoing criminal investigation) and that they had certain responsibilities related to corporate documents.

Like the CID interrogatories, no individual exists who is willing to sign these Certificates, as doing so would require that individual to waive his or her Fifth Amendment privilege. Accordingly, this portion of the government's motion should also be denied.

### III. The Appointment of an Agent to Answer the CID Interrogatories Is Not Feasible and Fails to Protect Fifth Amendment Rights.

The government concedes that interrogatories, even when propounded to a corporation, can only be answered by natural persons. Those natural persons all have an indelible right to the protection against self-incrimination enshrined in the Fifth Amendment, which the government also concedes. The government contends, however, that Respondents should be required to appoint an agent or representative to answer the interrogatories contained in the CIDs.

As an initial matter, the appointment of an agent or representative to answer the CID interrogatories, all of which require detailed knowledge of Respondents' operations, is simply not feasible in this case. As their limited document production makes clear, Respondents maintain very few documents requested by the CID. Without such corporate records, it would be impossible for an appointed agent or representative to answer the CID interrogatories without relying on communications with individuals affiliated with the LLCs. But, of course, this results in circular reasoning: Any such individual would have a Fifth Amendment privilege, and putting a "middle-man" between them and the substantive interrogatory responses is not a viable remedy. The government's suggestion otherwise ignores the realities of this particular case; namely that Respondents are not large companies with detailed corporate records that would allow an outsider to review information and provide substantive interrogatory responses.

The United States Supreme Court expressly contemplated this scenario in *United States v. Kordel*, 397 U.S. 1 (1970). The Court acknowledged that there might be scenarios "where no one can answer the interrogatories addressed to the corporation without subjecting himself to a real and appreciable risk of self-incrimination." *Id.* at 9. In such a scenario, the Supreme Court assumed that the appropriate remedy would be to postpone civil discovery until the termination of the criminal action. *Id.* Although the Supreme Court did not halt civil discovery in *Kordel*, it was because the respondents in that case failed to raise Fifth Amendment concerns when answering the interrogatories in the first instance.

The government attempts to dismiss *Kordel* as merely dicta, but the Supreme Court expressly acknowledged that situations like the present are "troublesome," and the assumption is to halt a civil proceeding while the criminal proceeding runs its course. *Id.* Furthermore, the reasons the Supreme Court declined to find a Fifth Amendment privilege violation – the failure to assert the privilege at the time of answering the interrogatories – is unequivocally absent here. Respondents have asserted and vigorously maintain their Fifth Amendment right against self-incrimination.

Accordingly, and for the reasons discussed in Respondents' response brief, the Court should deny the government's motion as it relates to the interrogatories as well.[2]

## IV. Conclusion

Respondents have produced all known documents responsive to the CIDs. Although the government claims that Respondents should be compelled to have someone sign the Certificate of Compliance attached to each CID, there exists no individual who is willing to sign these Certificates, which would require waiver of that individual's Fifth Amendment privilege. Similarly, there exists no individual who is willing to answer the CID interrogatories, which would also require waiver of that individual's Fifth Amendment privilege.

If the government genuinely wanted to overcome these issues, it has the unique power to do so by seeking an order of immunity. However, it has chosen not to go that route and, accordingly, this Court cannot grant the government its

---

[2] In their response brief, Respondents suggested that it might be appropriate to submit certain information to the Court *ex parte* and *in camera*, so as to satisfy the Court that there is a valid Fifth Amendment invocation, while at the same time guarding from the government's view the very information that the Fifth Amendment is designed to protect. The government takes umbrage with this suggestion, arguing that Respondents' offer is "vague" and would "further protract the government's investigation." [Dkt. 13 at 4]. Respectfully, however, the government's right to a speedy investigation must yield to an individual's constitutional right against self-incrimination. Moreover, any such delay would be minimal.

requested relief, as doing so would violate the Fifth Amendment's privilege against self-incrimination.

For these reasons, as well as the additional reasons contained in their response brief, Respondents respectfully request that the Court deny the government's Motion for an Order to Show Cause.

Respectfully submitted, this 19th day of August 2024.

        CHILIVIS GRUBMAN

        */s/ Scott R. Grubman*
        Scott R. Grubman | Ga. Bar No. 317011
        Brittany M. Cambre | Ga. Bar No. 350793
        (Pro Hac Vice forthcoming)
        Brandi Z. Murrain| Ga. Bar No.167467
        (Pro Hac Vice forthcoming)
        1834 Independence Sq.
        Atlanta, GA 30338
        P: (404) 233-4171
        F: (404) 261-2843
        sgrubman@cglawfirm.com
        bcambre@cglawfirm.com
        bmurrain@cglawfirm.com
        *Attorneys for Respondents*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

*/s/ Scott R. Grubman*
Scott R. Grubman