1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF GEORGIA
2                SAVANNAH DIVISION

3    UNITED STATES OF AMERICA,    )
                                  )
4          Plaintiff,             )
                                  )
5       vs.                       )    CASE NO. 4:24-CV-92
                                  )
6    ALLIANCE PARK, LLC,          )
                                  )
7          Defendant.             )
     ----------------------------

8

9

10

11                                          *Kelly A. McKee*

12

13

14        TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
          **BEFORE THE HONORABLE R. STAN BAKER**
15                    Savannah, GA
                   February 12, 2025

16

17

18

19

20

21   COURT REPORTER:    Kelly A. McKee, CCR, RMR, CCP, RDR
                        United States Court Reporter
22                      P.O. Box 8286
                        Savannah, GA  31412
23                      912-650-4065

24

25      (Proceedings reported by mechanical stenography, transcript
     produced by computer-aided transcription.)

2

```
1                      APPEARANCES OF COUNSEL

2    FOR THE UNITED STATES OF AMERICA:

3        BRADFORD COLLINS PATRICK, Esq.
         UNITED STATES ATTORNEY'S OFFICE
4        P.O. Box 8970
         Savannah, GA  31412
5        912-201-2555
         Email:  bradford.patrick@usdoj.gov
6
     FOR THE DEFENDANT:
7
         SCOTT ROBERT GRUBMAN, Esq.
8        BRITTANY CAMBRE, Esq.
         CHILIVIS GRUBMAN, LLP
9        1834 Independence Square
         Atlanta, GA  30338
10       404-233-4171
         Email:  sgrubman@cglawfirm.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                    **P R O C E E D I N G S**

2                        **(11:36 a.m.)**

3          THE COURT:  Good morning, everyone.  This is Judge

4    Baker.  We're on in *United States of America vs. Alliance Park,*

5    *LLC*, which is 4:24-CV-92.  Who is on the call for the United

6    States?

7          MR. PATRICK:  Your Honor, this is Brad Patrick.

8          THE COURT:  Thank you.  And who is on the call for the

9    respondent?

10          MR. GRUBMAN:  Scott Grubman and Brittany Cambre.

11          THE COURT:  Thank you.  The last time we were together I

12    heard from the respondent's counsel ex parte about their

13    position, without stating any specifics, that essentially no

14    documents or information could be produced in response to the

15    request of the United States because of the Fifth Amendment

16    privilege issue, but also of a nonexistence of documents.

17          Following that I have had -- respondent's counsel was

18    going to do a little bit more double checking just to make

19    certain that the factual questions that the Court raised were

20    addressed fully.

21          Is respondent's counsel comfortable reporting to the

22    Court with the United States present or would respondent's

23    counsel rather do that ex parte?

24          MR. GRUBMAN:  We do have some information, Judge, I

25    think would be helpful to the Court that we think would be more

4

1   appropriate, at least at the beginning, to be ex parte.

2       THE COURT:  Okay.  Well, consistent with the procedure I

3   employed last time, I'll take up that issue ex parte.

4   Obviously, if any of that information I determine should be

5   disclosed to the United States, then I'll disclose it, with a

6   warning to respondent's counsel before I receive it.

7       But I think everybody is on the same page here of what

8   we're trying to accomplish, just to see if, you know, the

9   request can be satisfied without infringing upon any

10  constitutional protections and where we're going with that.

11  Okay?

12      So any objection from the United States at this time to

13  just dropping off the call and then Mrs. Hammock will message

14  you when it's time to dial back in?

15      MR. PATRICK:  I can do that, Your Honor.  This might not

16  be the appropriate time to address this, and maybe it's putting

17  the cart before the horse, but I just would like to preview for

18  the Court's consideration that the government's position here is

19  that a representation of counsel that all documents have been

20  provided in response to CID is not sufficient to satisfy

21  respondent's obligations.

22      I did locate a First Circuit case involving a grand jury

23  subpoena in which the First Circuit held that a company's

24  production of records through an attorney, while refusing to

25  provide testimony that they were all of the documents responsive

5

1    to the grand jury subpoena, is inadequate.  And I'll just cite

2    that.  It's *In Re: Grand Jury Proceedings* at 838 F.2d 624.  And

3    that's a First Circuit case from 1988.  But like I said, that

4    may be putting the cart before the horse.

5            THE COURT:  Thank you, Counsel.  We'll certainly take

6    that up, if that's the position that respondent's counsel takes.

7            But I'll hear from respondent's counsel at this time off

8    of the -- I'll hear from respondent's counsel ex parte, and then

9    we'll come back on the record.

10           So, Mr. Patrick, if you'll drop off at this time.  Thank

11   you.

12           MR. PATRICK:  Yes, Your Honor.

13     (Ex parte conversation held from 11:40 a.m. until 11:54 a.m.)

14           THE COURT:  All right.  Mr. Patrick, was that you

15   dialing back in?

16           MR. PATRICK:  Yes, Your Honor.

17           THE COURT:  All right.  Very good.  We're back on the

18   public record at this time.  What I can disclose from

19   respondent's counsel -- I think they can just disclose it to you

20   and tell you what it is they have found out, what they're

21   comfortable of telling you, and then I'll hear from all of us

22   about how we need to move forward.

23           But I want to go ahead and give respondent's counsel the

24   opportunity to disclose that which is not the full of everything

25   I heard in the ex parte discussion, but it's the lion's share of

6

1  it that I believe respondent's counsel is comfortable

2  describing.  So go ahead.

3      MR. GRUBMAN:  Yes, Your Honor.  Thank you.  So we

4  have -- we are ready to produce 30 quitclaim deeds.  For reasons

5  I'm going to decline to say, we do not believe they're

6  responsive to document request Number 7.  However, we

7  acknowledge that they would be helpful in answering

8  Interrogatory Number 7, which has different language, and so

9  we're going to produce those.

10      And we can also say that upon further investigation, we

11  have not identified any third party who would be able to answer

12  the interrogatories or who would be able to consult with any

13  other third party about the interrogatories or documents.  And

14  so with that, Your Honor, I defer to the Court.

15      THE COURT:  Okay.  Mr. Patrick, I'll hear your response

16  to that, but also the argument you made that simply having an

17  attorney convey information from the LLC, essentially the

18  attorney doing the work that the independent third party would

19  be doing, I'll hear -- you're not satisfied by that, and I

20  believe you had a case in that regard, but I'll just hear

21  argument from you there.

22      MR. PATRICK:  Yes, Your Honor.  The principal issue is

23  that the government needs a way to, you know, hold respondents

24  to what they're telling the Court.

25      Courts consistently have required a sworn statement to

7

1    that effect.  I think that's appropriate here when it comes to

2    the production and authentication of documents that are

3    requested through process that are directed toward a company or

4    a corporate custodian.

5         Our suggested approach is -- and backing up a little

6    bit, you know, we do think that the objection that we received

7    was overbroad in terms of a blanket assertion of the Fifth

8    Amendment.  We think that it needs to be on a question-by-

9    question basis in terms of interrogatories.  If there is an

10   interrogatory that would invade upon the Fifth Amendment, we

11   believe that there should be an objection on that ground to that

12   specific interrogatory that explains why the answer would

13   implicate the Fifth Amendment.

14        As far as counsel providing documents, you know, counsel

15   is certainly one of the options that the respondents could use

16   to submit the sworn statement of compliance with the CIDs.  So

17   we would have no objection if respondent's counsel undertook

18   that obligation, but we believe that someone selected by the

19   respondent needs to do.

20        MR. GRUBMAN:  May I respond, Your Honor?

21        THE COURT:  You may.

22        MR. GRUBMAN:  So with respect to the government, I just

23   don't believe the argument reflects a proper understanding of

24   the Fifth Amendment privilege.

25        You cannot -- it doesn't matter who it is, me, another

8

1    representative, someone off the street, an employee of the Court

2    or Mr. Patrick himself; no one is going to be able to obtain

3    information responsive to any of these things without talking to

4    an individual, who undoubtedly, unquestionably, has a Fifth

5    Amendment privilege and will not answer any of these questions.

6        And Mr. Patrick's statement that we should be required

7    to tell him why the Fifth Amendment applies certainly

8    demonstrates a lack of knowledge of the Fifth Amendment, because

9    that would eviscerate the Fifth Amendment.  There would be no

10   Fifth Amendment, if the person invoking the Fifth Amendment --

11   now, maybe it's one thing to do it ex parte to a judge.  That's

12   one thing.  I've done that before.  But to tell the DOJ I have a

13   Fifth Amendment privilege and let me explain why I think my

14   answer is going to incriminate me, Your Honor, with all due

15   respect to the government, to the Court, I really can't even

16   respond to that with a straight face because that's not

17   consistent with the Fifth Amendment.  That cannot be a rule, and

18   so we reject that.

19       I do not know what 1988 First Circuit case Mr. Patrick

20   has.  I would be happy to look at that and submit additional

21   briefing, if that's necessary, but nothing Mr. Patrick suggests

22   is consistent with the Fifth Amendment privilege.  And it

23   doesn't matter what the False Claims Act says because all laws

24   yield to the Constitution, and at the point where those two

25   things conflict, the Constitution always wins.

1      And so we think we have done -- with this document

2   production the government has obtained everything they're able

3   to.  They, of course, have the ultimate authority of seeking

4   immunity for testimony, and they can certainly go that way,

5   because the Constitution does give them an out.  But they kind

6   of don't want that out, but they're running up against the

7   constitutional protections, and sometimes that's inconvenient

8   for an investigation, but that's kind of the whole point of them

9   in the first place.  So we stand by our arguments.

10      MR. PATRICK:  May I respond, Your Honor?

11      THE COURT:  Mr. Patrick, if I appointed a third party,

12   who pays for it?

13      MR. PATRICK:  Thank you.  I'm glad Your Honor brought

14   that up.  I wanted to address that, because I -- the obligation

15   is not for the Court to appoint an agent.  It's the obligation

16   of the respondents to appoint an agent.  So respondents are the

17   ones that are obligated under the CID to comply, and so one of

18   the ways that respondents can meet their obligation is through

19   their voluntary appointment of an agent.  So it would be at the

20   respondent's expense, and the respondents would be responsible

21   to identify any particular agent.  The government doesn't have

22   an interest in whom they select so long as the responsive

23   information and documents are produced.

24      THE COURT:  Okay.  All right.  I'll let you go ahead and

25   respond.  You were going to respond to the argument from counsel

1    regarding what essentially was a futility argument, that

2    appointing an agent will be futile because the only person that

3    could communicate with that agent is going to invoke the Fifth.

4         MR. PATRICK:  Well, as we said in our papers, we

5    acknowledge that there remains an individual right for anybody

6    who has Fifth Amendment concerns.  But that's not the only way

7    to -- speaking with that person is not the only way to comply.

8    There is -- generally the types of information that has been

9    requested, not all of them, but we've requested, for example,

10   organization charts.  It would be the obligation of someone who

11   has -- even Mr. Oloans, who I understand is the individual

12   respondents are referring to -- Mr. Oloans would have an

13   obligation to at least give access to whatever documents he does

14   have, and if there are none, then the agent can say that there

15   aren't any.

16        But the obligation remains for the affected individual

17   to provide access to any documents that might bear on the

18   discovery requests -- or, I'm sorry -- the documents and

19   interrogatories requested in the CID.

20        Where the Fifth Amendment can potentially be invaded is

21   in oral communications between the selected agent and

22   individual.

23        So the government acknowledges that someone like

24   Mr. Oloans would not have to divulge the contents of his memory,

25   I think is the language one of the cases uses, but he would need

1    to make any documents that he has as a corporate custodian

2    available to the appointed agent to enable some form of a

3    response.

4              MR. GRUBMAN:  At the risk of --

5              THE COURT:  Y'all sit tight.  I'll be back on the

6    record.  Y'all sit tight.  I'll be in recess.

7              MR. GRUBMAN:  Yes, sir.

8     (Proceedings stood in recess from 12:04 p.m. until 12:09 p.m.)

9              THE COURT:  All right, Counsel.  Is everybody there?

10             All right.  I'm going to order that these respondents

11   appoint an independent agent to respond for them.

12             As to one of the -- just one of them that I've pulled

13   up, for example, the Prudential Realty, LLC, I was able to pull

14   up articles of organization from the Secretary of State's

15   website that shows multiple members that I haven't heard about,

16   one being a Joseph Fryar, and it says "member."  "Members:

17   Member one, Joseph Fryar; member two, David Pregibon,"

18   P-R-E-G-I-B-O-N, both of those individuals with an address at

19   7400 Abercorn Street in Savannah, Georgia.  That in and of

20   itself tells me there's a little bit more here than counsel has

21   been told.  So we've gotta find out.

22             I mean, frankly, just saying from, you know, one

23   person's perspective this is all futile, that's all well and

24   good, but that's exactly why we need an agent to go determine it

25   really is.  To the extent the interrogatories --

12

1          MR. GRUBMAN:  May I ask a question, Your Honor?

2          THE COURT:  Not yet.

3          MR. GRUBMAN:  Sorry about that.  Yes, Your Honor.

4          THE COURT:  -- would require any of these entities, you

5     know, the representative who's appointed, to consult the

6     knowledge of an insulate witness, well, the entities aren't

7     required to answer other than to state the basis on which it

8     cannot answer.

9          To the extent the interrogatories seek information that

10    may be gleaned from documents or other witnesses, though, then

11    the entity is required to answer.  And so that's what we're

12    going to do.

13         What I'm going to do, though, is get Mr. Patrick to

14    draft up an order, a proposed order.  Obviously he can consult

15    with respondent's counsel on that, and respondent's counsel can

16    have input to the Court as to where it sees problems or needs

17    more clarification in the order.

18         But the issue here, there's just too much that I've

19    seen, including these new documents, that we can't just rely

20    upon, frankly, at this point, third-hand information of, oh,

21    there's nothing there.  That's just not enough, particularly

22    given that there are other -- at least other past members of

23    this LLC that have not been consulted, as to one of the LLCs.

24         And I think everybody here understands the Fifth

25    Amendment.  I don't think anybody doesn't understand the Fifth

1    Amendment.  That was said during the call.  Everybody

2    understands the Fifth Amendment.  That's not the point.  The

3    question is whether they can be responded to without infringing

4    upon the Fifth Amendment.  Okay.

5            All right.  And we don't know that, at this point, until

6    we get an agent to respond in the manner that the government has

7    said they need to.

8            All right.  What questions does the government have?

9            MR. GRUBMAN:  Your Honor, these are nonoperating LLCs --

10           THE COURT:  Let's go in order.  Can we, please,

11   Mr. Grubman, listen to me.  We're going to go in order.

12           MR. GRUBMAN:  I apologize.  It's just the phone.  I

13   apologize.

14           THE COURT:  What questions does the government have?

15           MR. PATRICK:  The government doesn't have any questions,

16   Your Honor.

17           THE COURT:  Okay.  What questions does the defense have?

18   Or the respondents, excuse me.

19           MR. GRUBMAN:  These are nonoperating LLCs.  With all due

20   respect to the Court, I'm not sure the Court could require them

21   to hire someone.  There's no funds to hire anyone.  There's no

22   individual subject to the Court's jurisdiction --

23           THE COURT:  You've entered an appearance on their

24   behalf.  I mean, you've entered an appearance on their behalf in

25   this case.

1    MR. GRUBMAN:  Okay.  My other question, Your Honor, is

2  this a final order for purposes of appeal?  Because we do plan

3  to go to the Eleventh Circuit with this, and if not, we ask for

4  permission to go so with an intermediate order.

5    THE COURT:  That's for you to ask the Eleventh Circuit,

6  whether it's a final order for issues of appeal.  I haven't

7  entered the order yet.  I'm going to get a written order from

8  Mr. Patrick.

9    But, you know, I guess that's for the Eleventh Circuit

10  to know and for you to find out.  All right.

11    MR. GRUBMAN:  Okay.  My understanding is that the

12  district court --

13    THE COURT:  All right --

14    MR. GRUBMAN:  And I wasn't saying, Your Honor --

15    THE COURT:  Mr. Grubman, stop.

16    MR. GRUBMAN:  Yes, Your Honor.

17    THE COURT:  Stop talking.

18    MR. GRUBMAN:  Yes, Your Honor.

19    THE COURT:  Stop.  Listen.  A practice pointer.  When a

20  judge is working with you as much as I've worked with you in

21  this case, gone ex parte, when, frankly, I didn't have to and

22  I'm trying to get you all to come to agreement, probably you

23  shouldn't tell opposing counsel that they don't understand the

24  Fifth Amendment and insult their intelligence, and probably when

25  the Court's trying to craft an order and giving the government

15

1    the opportunity to draft the order and for you to have input on

2    the order, you shouldn't tell the judge that you plan to take

3    him up on appeal.  You know better.

4         Other judges would be far more offended than I am.

5    Okay?  I get it.  I took judges up on appeal all the time.  It's

6    part of the deal.  The Eleventh Circuit overturns me, fine.

7    I've done the best job that I can.  But I don't appreciate

8    attorneys telling me that they're taking me up on appeal when I

9    haven't even issued the order yet.  Okay?

10        MR. GRUBMAN:  Yes, Your Honor.  I apologize.

11        THE COURT:  I look forward to receiving Mr. Patrick's

12   proposed order.  I look forward to seeing your comments on the

13   proposed order.  Nobody is required to do anything until I issue

14   the written order.

15        All right.  With nothing further from either side,

16   everyone have a good day.  We'll be adjourned.

17        MR. GRUBMAN:  May I apologize?  Thank you.

18             (Proceedings concluded at 12:16 p.m.)

19                        - - -

20

21

22

23

24

25

16

CERTIFICATE OF OFFICIAL REPORTER

I, Kelly A. McKee, Registered Diplomate Reporter, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the Southern District of Georgia, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 24th day of April, 2025.

*Kelly A. McKee*
_____
KELLY A. McKEE, CCR, RMR, CCP, RDR
#2731